IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Manuel Acosta, #272670 )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>State of South Carolina, )<br>Jon Ozmint, and the )<br>Warden of Lieber Correctional Institution, )<br>)<br>Respondents. )<br>) | Civil Action No.8:08-755-RBH-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 14.)[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on March 3, 2008.[2] On August 1, 2008, the respondent moved for summary judgment. By order filed August 4, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On September 5, 2008, the petitioner filed a response opposing the respondent's summary judgment motion.

## **PROCEDURAL HISTORY**

---

[1] A prisoner's custodian is the only proper respondent in a habeas corpus action. *See Rumsfeld v. Padilla,* 542 U.S. 426, 434-35 (2004). Consequently, it appears to the undersigned that only the warden is a proper party and that the others should be dismissed from this action.

[2] This is the date the envelope was stamped as having been received by the Lieber mailroom. *Houston v. Lack*, 487 U.S. 266 (1988)(holding document considered filed upon delivery to prison officials for forwarding to court). (Pet. Attach.)

The petitioner, a state prisoner, is currently incarcerated at the Lieber Correctional Institution. In January 2001, the petitioner was indicted by the Florence County Grand Jury for murder and possession of a deadly weapon during the commission of a violent crime He was represented by attorney W. James Hoffmeyer. On February 5-8, 2001, the petitioner was tried before a jury with the Honorable Paul M. Burch presiding. The jury found the petitioner guilty of murder and Judge Burch sentenced him to life.

The petitioner filed a direct appeal. Appellate Defender Joseph L. Savitz, III, represented the petitioner and filed an *Anders*[3] brief on his behalf. The petitioner also filed a pro se response. The South Carolina Court of Appeals dismissed the petitioner's appeal in an unpublished opinion. *State v. Acosta*, Op. No. 02-UP-751 (S.C. Ct. App. filed November 27, 2002). The remittitur was sent down on January 7, 2003. The petitioner did not appeal to the South Carolina Supreme Court.

On September 29, 2003, the petitioner filed an application for post-conviction relief ("PCR"), raising the following grounds for relief:

> 1. Ineffective assistance of plea counsel, in that counsel
>
>> a. Failed to investigate and prepare a defense,
>>
>> b. Failed to require a "qualified interpreter" be used throughout the trial and failed to have the State's Interpreter removed after she made several errors, and
>>
>> c. Failed to object to the prejudicial demonstration performed by the prosecutor during closing argument.
>
> 2. Lack of subject matter jurisdiction, in that
>
>> a. The indictment was never filed and
>> b. Applicant was not indicted within 90 days after his arrest.

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

2

On November 14, 2003, an evidentiary hearing into the matter was held before the Honorable Michael Baxley. The petitioner was present at the hearing and was represented attorney Philip Atkinson. On January 16, 2006, the PCR court issued its order denying the petitioner PCR.

The petitioner filed an appeal. On appeal, the petitioner was represented Appellate Defender Wanda H. Carter. The petitioner raised two issues on appeal:

> 1) Are the PCR Court's findings and conclusions regarding the service of a prosecutor's mother as the court interpreter correct and supported by the evidence?
>
> 2) Did Petitioner fail to prove counsel was ineffective for not insisting the court interpreter's qualifications be established?

On January 9, 2008, the South Carolina Supreme Court denied the petition for a writ of certiorari. The remittitur was sent down on January 25, 2008.

On March 3, 2008, the petitioner filed this habeas action rasing the following two grounds for relief:

> **Ground One:** Ineffective Assistance of Counsel
>
> **Supporting Facts:** Failing to require "Qualified Interpreter" be used throughout the trial. Failure to object to the prejudicial demonstration performed by the solicitor during closing arguments.
>
> **Ground Two:** Denied Access to Consulate
>
> **Supporting Facts:** Foreign national unable to speak English. Violation of right under Geneva Convention.

(Pet.)

## FACTS

On September 2, 2000, the petitioner's roommate, Joe Brown, also known as Tony Torres, was stabbed twenty six times, struck on the top of his head with some type of blunt object, and manually or with blunt force trauma strangled to death. (App. 316-328; 334; 338-340.) At trial, Eduardo Perez Rivera testified he witnessed the petitioner attack Brown

3

because Brown had kicked the petitioner's dog away from the front door opening of the petitioner's trailer. (App. 92-94.)  Rivera testified that he heard the victim cry out to the petitioner "don't" and "you already cut me on the arm." (App. 97.)  The next day, Rivera testified that he saw the petitioner burning bloody clothes in a garbage can behind the petitioner's house. (App. 107-108.)  Rivera testified that the petitioner said he was looking for a shovel and admitted that he had killed Brown. (App. 122; 123; 138.)  Rivera testified that later the petitioner stated that he had fought with Brown but Brown had returned to Myrtle Beach where he had originally lived.  Another witness, Mitchell Robinson, also testified that the petitioner had admitted that he had killed the Brown. (App. 194.)

The police found drag marks in the petitioner's driveway which led to the end of the petitioner's drive-way. (App. 306.)   Directly across the road from the driveway, the police found a shallow grave where Brown had been buried. (App. 286-288.)  The victim had three defensive stab wounds to his hand and twenty-three stab wounds to his neck and chest. (App. 333.)  The pathologist testified there were three areas of fracture in the victim's neck.  The cause of death was determined to be strangulation or asphyxia. (App. 338.)

Several witnesses testified that the morning after the murder, the petitioner was asking neighbors if he could borrow a shovel. (App. 133-34; 222; 224.)  The police found the shovel behind the petitioner's house with fresh dirt on it. (App. 283-85.)  The petitioner gave police a wallet with several identity cards including a social security card with name Joe Brown on it. (App. 242-243.)  The petitioner told police and his employer that Brown had gone back to Myrtle Beach. (App. 244.)

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must

6

present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

  A.  Exhaustion

  The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the

7

state courts before he can proceed on the claim in this court.  The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527,

533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met

9

and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

In Ground One, the petitioner contends trial counsel was ineffective for two reasons: failing to require that a "Qualified Interpreter" be used during the trial and failing to object to the prejudicial demonstration performed by the Solicitor during closing arguments. Although the petitioner raised both of these claims in his PCR application, he did not raise the second claim regarding the solicitor's prejudicial demonstration during closing

arguments in his appeal from the denial of PCR. Therefore, this issue is procedurally barred. *Coleman v. Thompson,* 501 U.S. 722 (1991)(failure to properly appeal issue to state appellate court results in procedural bar on habeas review).

In Ground Two, the petitioner contends he was denied access to the consulate. This claim is also procedurally barred because the petitioner did not raise it at trial, in his PCR proceeding, or on appeal. *Coleman,* 501 U.S. 722. Further, the petitioner has not alleged sufficient cause and prejudice or actual innocence as to these claims.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan,* 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not address the merits of the second claim raised in Ground One or the claim raised in Ground Two as these claims are procedurally barred as discussed above.

**Ground One**

In his first claim for relief in Ground One, the petitioner alleges trial counsel was ineffective for failing to require that a qualified interpreter be used throughout the trial. The petitioner raised this claim in his PCR application and the PCR court denied him relief.

To prevail on an ineffective assistance of counsel claim, the petitioner must show 1) that his trial counsel's performance fell below an objective standard or reasonableness, and 2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). The petitioner bears the burden of proving an error and prejudice in his ineffective

11

assistance of counsel claim.   In cases brought under § 2254, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly . . . Rather . . . § 2254(d)(1) requires a habeas petitioner to show that the state court 'applied *Strickland* to the facts of his case in an objectively unreasonable manner.' " *James v. Harrison*, 389 F.3d 450 (4th Cir. 2004) (internal citations omitted).

As the PCR court noted at the hearing, the petitioner's primary allegations were that the official interpreter, Celia Jepertinger, was not qualified to be an interpreter under S.C. Code Ann. § 17-1-50 because her son, John C. Jepertinger, was one of the prosecutors on the case. (App. 30.)   He further argued that she made many errors and mistranslations during the testimony of the State's key witness, Eduardo Perez Rivera, a non-English speaking Mexican.   (App. 30; 49-50; 126.)

Section 17-1-50 provides in relevant part that a:

(4) "Qualified interpreter" means a person who:

    (a) is eighteen years of age or older;

    (b) is not a family member of a party or a witness;

    (c) is not a person confined to an institution; and

    (d) has education, training, or experience that enables him to speak English and a foreign language fluently, and is readily able to interpret simultaneously and consecutively and to sight-translate documents from English into the language of a nonEnglish speaking person, or from the language of that person into spoken English.

The petitioner argued trial counsel was ineffective for not insisting on proof that Celia Jepertinger had the education, training, or experience necessary to allow her to speak Spanish and English fluently and interpret from one language to the other.

At the PCR hearing, trial counsel testified that although there were occasional problems with the translation and there was sometimes confusion, every instance of

12

relevance and importance was addressed. (App. 66-67; 69-70; 75; 79-80. ) Trial counsel also explained he felt comfortable that Susan Acosta, the petitioner's personal interpreter, would inform him of any mistranslations. (App. 66; 114.) He denied the petitioner's allegation that he failed to object to mistranslations of Rivera's testimony after being informed of them. (App. 111.) He further testified that Rivera testified consistently with his statement and he had the opportunity to cross-examine Rivera. (App. 115.) He further testified that if he had ever thought that the petitioner was in danger of not receiving a fair trial, he would have moved to have Celia Jepertinger removed as interpreter and sought a mistrial or continuance. (App. 80-81.)

At the PCR hearing, the petitioner testified at times Rivera was unsure whether the petitioner was the person he saw attack the victim because he only saw the attacker from behind and it was dark, but Celia Jepertinger interpreted Rivera as having positively identified the petitioner. (App. 50.) The petitioner testified that although there were many translation errors, he did not tell his trial counsel about them. (App. 50.) He further testified that he told trial counsel about one instance of an error in translation in regard to Rivera's testimony, but trial counsel took no action. (App. 50-51.)

The petitioner also denied consenting to Celia Jepertinger's service as the court's interpreter and testified trial counsel did not tell him he had the right to object to her service. (App. 33-35.) The petitioner testified that he recalled trial counsel asking him if he was okay with Celia Jepertinger interpreting at trial and he said he did not know. (App. 33.) Trial counsel testified the prosecution asked him in advance of trial if he would consent to Celia Jepertinger's service as the court's interpreter. (App. 54-55.) Trial counsel testified he talked with the petitioner and told him he did not have to consent, and asked the petitioner to let him know if he had any concern about her service, but the petitioner had no concern

13

with her service.  Trial counsel believed that may have been in part due to the fact that the defense had its own interpreter for the trial, Susan Acosta. (App. 61 – 63;111-112.)

Trial counsel testified he relied on what he was told by the prosecutors regarding the interpreter's ability. (App. 58 – 59.)  Trial counsel admitted that there were some translation errors such as when Celia Jepertinger would answer a follow up question as though it were directed toward her and not the witness.  (Supp. App. 90; 98.)  However, trial counsel stated he believed she was qualified and that, although there were problems, he was satisfied that she performed well.  Trial counsel noted the difficulties were similar to the difficulties and confusion which occurred with Susan Acosta's translation at the PCR hearing.  (App.65-67; 113-114.)

First,  to the extent the petitioner is raising an ineffective assistance claim with regard to the PCR Court's interpretation of § 17-1-508, this claim is not cognizable in federal habeas corpus, as it depends entirely on a state court's determination of its own laws.  *See Estelle v. McGuire,* 502 U.S. 62 (1991)(federal habeas corpus relief does not lie for errors of state law).

As to the petitioner's claim of ineffective assistance of counsel, the PCR court found the petitioner's testimony was not credible, while trial counsel's testimony was credible. (App. 130.)   The PCR court specifically concluded Celia Jepertinger service as an interpreter did not violate § 17-1-508 and, further, that the defense specifically approved of her service.  (*Id.*)  The court further found that trial counsel was not ineffective for failing to seek her removal during the trial either because of bias or incompetence.  (*Id.*)  The PCR court also found that when needed, trial counsel objected, and any errors were cured.  (*Id.*)  Additionally, the PCR court noted that trial counsel took the additional step to protect the petitioner by hiring Susan Acosta to interpret for the petitioner throughout the trial.  (*Id.*)  The

14

PCR court also found that the petitioner failed to show Celia Jepertinger's service as an interpreter prejudiced him.   (App. 130-131.)

The PCR court's determination regarding the credibility of the petitioner's and trial counsel's testimony is entitled to deference.  *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003).  The PCR court also noted that there was substantial evidence against the petitioner, including two witnesses who had testified that the petitioner's had confessed to him that he had killed the victim.  (App. 122; 138; 194.)   Based upon a review of the entire record, the petitioner cannot show either deficient performance or prejudice resulting from his counsel's failure to object to the interpreter's performance. The state court's decision was not contrary to, nor did it involve an unreasonable application of, *Strickland.* Further, the decision was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, this claim fails.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#14) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


                                                             s/Bruce Howe Hendricks
                                                             United States Magistrate Judge

November 25, 2008
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).